IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL CUSIMANO,

        Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

Case No.: C-11-00919 JCS

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

## I.    INTRODUCTION

Plaintiff Michael Cusimano ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his Application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("SSA"). Plaintiff asks the Court to reverse the Commissioner's denial of benefits and order payment of benefits or, in the alternative, to remand for additional proceedings. For the reasons stated below, the Court AFFIRMS the Commissioner's decision.[1]

## II.    BACKGROUND

### A.    Procedural History

Plaintiff contends that he has been disabled and unable to work since September 20, 2006.[2] On May 9, 2007, he filed a Title II application for a period of disability and DIB. Administrative Record ("AR") at 102. On April 16, 2007, he protectively filed a Title XVI application for SSI. *Id*. at

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).
[2] Plaintiff filed a previous application for disability insurance benefits on March 13, 2003. AR at 49. After his claim was denied initially and on reconsideration, he appealed to an administrative hearing. *Id*. The Administrative Law Judge denied his claim on May 11, 2004, determining that he was able to do a full range of light duty work. *Id*. at 56-57.

11.  The Commissioner denied his claim on September 14, 2007.  *Id*. at 65.  On reconsideration, the Commissioner again denied his claim on January 11, 2008.  *Id*. at 72.  On January 22, 2008 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id*. at 77.  A hearing was held on August 13, 2009 in Sacramento, California before ALJ Michael Seng.  *Id*. at 21.  On November 9, 2009, the ALJ found that Plaintiff was ineligible for benefits because he was not disabled.  *Id*. at 18.  On March 25, 2011, the Appeals Council denied Plaintiff's request for a review of the ALJ's ruling.  *Id*. at 1.  Accordingly, the ALJ's decision became the final decision of the Commissioner.

Plaintiff filed this action pursuant to 42 U.S.C. § 1383(c)(3), which gives the Court jurisdiction to review the Commissioner's final decision.

**B.     Plaintiff's Background**

Plaintiff was born on April 16, 1966.  *Id*. at 102.  He earned his GED in 1986.  *Id*. at 123.  He has worked as a mechanic, a truck driver, and in property maintenance.  *Id*. at 24-26, 125-131. Plaintiff's last employment ended in 2006.  *Id*. at 26, 125.  He alleges that he has been disabled since September 20, 2006.  *Id*. at 102.

**C.     Plaintiff's Medical History**

**1.     Background**

On July 22, 2001 Plaintiff was injured on the job when he stepped in a pothole and fell down. *Id*. at 52.  As a result, he suffered pain in his lower back and left leg.  *Id*.  His treating physician at that time, Dr. John Forsyth ("Dr. Forsyth") noted his weight was over 300 pounds.  *Id*.  Dr. Forsyth advised him to lose weight and stay with a 20-pound lifting restriction.  *Id*.  In March 2002, Dr. Forsyth released him for light work duty although he was limited by his chronic lower back pain.  *Id*.

In September of 2002, Plaintiff began seeing Dr. Vatche Cabayan ("Dr. Cabayan").  *Id*. at 53. Dr. Cabayan reported Plaintiff's weight at that time as 350 pounds.  *Id*.  Dr. Cabayan recommended Plaintiff lose weight to address his lumbar strain, leg cramping, left leg numbness, and constant lower back pain.  *Id*.

In October 2003, Plaintiff underwent a physical examination performed by Dr. J. Conrad Clifford ("Dr. Clifford") for the purposes of his previous disability insurance claim, which was denied on May 11, 2004.  *Id*. at 54, 57.  Dr. Clifford noted that Plaintiff weighed 486 pounds, but also found

2

United States District Court
Northern District of California

that he was not in any acute distress and was still capable of light work. *Id*. at 54. Dr. Clifford was adamant that Plaintiff should be discouraged from having operative treatment of his obesity based on the risk of cardiac arrest and pulmonary emboli. *Id*.

On July 31, 2006, Plaintiff was treated at Woodland Memorial Hospital for a sudden onset of bilateral abdominal and flank pain caused by exposure to heat while working. *Id*. at 185-186. The pain was relieved with stretching and worse with sitting. *Id*. at 185. His physical examination showed full range of motion in all four extremities, normal gait, normal station, and normal coordination. *Id*. at 186. The hospital performed a chest x-ray, which was unremarkable. *Id*. at 193.

On May 7, 2007, Plaintiff was again treated at Woodland Memorial Hospital after stepping in a pothole and twisting his left ankle. *Id*. at 182. Plaintiff was diagnosed with an acute left ankle sprain and prescribed Vicodin. *Id*. at 183. By that time, Plaintiff was already being treated at the Peterson Clinic, as discussed below, for his lower back and left leg pain.

### 2.   Treatment at the Peterson Clinic and by Dr. Lisa Baumeister

Plaintiff received treatment at the Peterson Clinic between, at least, March 28, 2007 and February 18, 2009. *Id*. at 208-211, 223-227, 251-263. In early 2007, Plaintiff sought treatment at the Peterson Clinic for problems sleeping.[3] *Id*. at 209. Plaintiff then weighed 485 pounds, suffered back pain, suffered leg cramps when standing, and was experiencing difficulty sleeping. *Id*. On June 13, 2007, Plaintiff complained of low back pain, sleep problems, and difficulty finding work. *Id*. at 226. The Peterson Clinic referred Plaintiff for a sleep study. *Id*. On October 10, 2007, Plaintiff returned to the Peterson Clinic with lower back pain, leg numbness, leg cramps, and difficulty sleeping. *Id*. at 223. At that time, he had "5/5" motor strength and full range of motion. *Id*. The physician ordered an x-ray for Plaintiff's spine, a follow-up sleep study, and prescribed a CPAP for Plaintiff's sleep problems and Ultram for Plaintiff's pain. *Id*.

On March 13, 2008, Plaintiff began saw Dr. Lisa Baumeister ("Dr. Baumeister") at the Peterson Clinic. *Id*. at 262.[4] Plaintiff reported chronic back pain, left leg pain, and difficulty sleeping. *Id*. Plaintiff also reported that he was taking Tylenol for the pain. *Id*. Dr. Baumeister noted that Plaintiff was limited in his left side, "4+/5," as opposed to his right side, "5/5," due to pain. *Id*. Dr.

---

[3] The month listed on the flow sheet containing Plaintiff's initial treatment notes is illegible.
[4] It is not clear whether or not Plaintiff had been treated by Dr. Baumeister prior to March 13, 2008.

United States District Court
Northern District of California

Baumeister further noted that Plaintiff should schedule a CPAP study, explore the possibilities of an MRI for his lumbar region, and consider bariatric surgery if he received MediCal. *Id*.

Dr. Baumeister continued treating Plaintiff through at least February 18, 2009. *Id*. at 251. At his April 28, 2008 follow-up appointment Plaintiff reported that he could not do household chores due to pain in his left ankle and knee, that he was tired, suffered constant back pain and left leg numbness, could not bend over to tie his shoes, and had difficulty sleeping. *Id*. at 261. Dr. Baumeister noted that Plaintiff should consider bariatric surgery but was not receiving MediCal and that Plaintiff had missed his sleep apnea sleep study appointments because he did not have money for gas. *Id*. In September 2008, Dr. Baumeister prescribed Abuterol, Tylenol, Motrin, and Ferrous Sulfate. *Id*. at 256. In October 2008, Dr. Baumeister issued a prescription for Zoloft in addition to new prescriptions for each of the other four medications. *Id*. On October 20, 2008, Plaintiff complained to Dr. Baumeister that he was suffering from choking and throat secretions when he tried to use his CPAP machine. *Id*. at 255. In the last of Dr. Baumeister's treatment notes in the record, from February 17, 2009, Dr. Baumeister was exploring the possibility that Plaintiff suffers from anemia. *Id*. at 251. At that time, Dr. Baumeister also renewed Plaintiff's prescriptions for acetaminophen and ibuprofen. *Id*.

Early in Plaintiff's treatment, on May 5, 2008, Dr. Baumeister drafted a letter in which she opined that Plaintiff is severely disabled due to his morbid obesity. *Id*. at 244. Dr. Baumeister noted that Plaintiff then weighed 482 pounds, and had a body mass index of 67.2. *Id*. Dr. Baumeister stated that she believed his obesity contributed to his severe obstructive sleep apnea, which was then untreated. *Id*. Dr. Baumeister explained that she had referred him to a CPAP titration study, but he had been unable to attend because his obesity made it impossible for him to drive. *Id*. Dr. Baumeister believed that his fatigue and low energy were related to his sleep disordered breathing. *Id*.

Dr. Baumeister also traced Plaintiff's back pain, which radiates down his left leg, to his obesity. *Id*. Dr. Baumeister noted that Plaintiff had a positive straight leg raise test on his left leg, and that strength in Plaintiff's left leg is decreased. *Id*. Dr. Baumeister explained that she did not refer Plaintiff for an MRI because she did not believe surgery would be advisable given his weight. *Id*. Dr. Baumeister also ruled out intensive weight loss programs because Plaintiff could not afford them. *Id*.

1   Dr. Baumeister found that Plaintiff is unable to stand for more than "15" due to his back pain.[5]

2   *Id*.  Dr. Baumeister also found that Plaintiff is unable to walk for more than five minutes because of

3   his back pain and fatigue.  *Id*.  Dr. Baumeister also noted that Plaintiff is unable to bend over to tie his

4   shoes due to his obesity.  *Id*.  Dr. Baumeister also found that Plaintiff cannot shop for groceries, clean

5   his house, or take out the garbage due to his limited mobility and fatigue.  *Id*.  Dr. Baumeister did not

6   discuss whether Plaintiff has any limitations on his ability to sit for prolonged periods.

7   **3.      Dr. Yang (Michelle) Sun**

8   On August 18, 2007, Dr. Yang (Michelle) Sun ("Dr. Sun") performed a comprehensive

9   internal medical evaluation of Plaintiff.  *Id*. at 196.  Dr. Sun's understanding was that Plaintiff had

10  been suffering back pain for three years since he had fallen at work.  *Id*.  Dr. Sun was aware that the

11  pain was constant, that the pain radiated into Plaintiff's left buttock and leg, and that Plaintiff

12  experienced constant numbness and tingling in his left leg.  *Id*.  Moreover, Plaintiff reported to Dr.

13  Sun that standing up and prolonged sitting trigger his symptoms.  *Id*.  Dr. Sun noted that Plaintiff took

14  Tylenol as needed and also had untreated sleep apnea.  *Id*. at 197.

15  During the evaluation, Dr. Sun noted that Plaintiff sat and walked comfortably.  *Id*.  Plaintiff

16  was also able to get on and off the exam table independently and remove his shoes.  *Id*.  Dr. Sun did

17  not believe Plaintiff was in any acute distress during the examination.  *Id*.  Among other things, Dr.

18  Sun evaluated Plaintiff's range of motion, "coordination/station/gait," straight leg raising, deep tendon

19  reflexes, sensory system, and motor strength.  *Id*. at 198-199.  Dr. Sun reported Plaintiff had difficulty

20  performing the straight leg raise and was "positive/negative" on the left side.  *Id*. at 198.  Dr. Sun also

21  reported that Plaintiff experienced "[l]eft lower extremity lumbar spine numbness sensation."  *Id*. at

22  199.  Otherwise, Dr. Sun found that Plaintiff had symmetrical motor strength, was able to heel and toe

23  walk without difficulty, and had "coordination/station/gait" within the normal range.  *Id*. at 198.

24  Based on her evaluation, Dr. Sun produced a functional assessment of Plaintiff.  Dr. Sun

25  concluded that Plaintiff could be expected to stand or walk for four to six hours during an eight-hour

26  workday.  *Id*. at 199.  Dr. Sun explicitly based this limitation on Plaintiff's morbid obesity, not his

27  back pain.  *Id*.  Dr. Sun also concluded that Plaintiff could be expected to sit without restriction during

28  

[5] Dr. Baumeister did not provide the units.  Based on the context, it is likely that she meant fifteen minutes.

United States District Court
Northern District of California

1  an eight-hour workday.  *Id*.  Dr. Sun stated that Plaintiff could lift or carry twenty pounds frequently

2  and thirty pounds occasionally.  *Id*.  Dr. Sun found that Plaintiff had mild postural limitations with

3  bending, stooping, and crouching due to his obesity but had no significant limitations on reaching,

4  handling, feeling, grasping, and fingering.  *Id*.

5            **4**.  **Dr. Sharon Amon**

6          On August 29, 2007, Dr. Sharon Amon ("Dr. Amon") produced a functional assessment based

7  on Plaintiff's treatment history.  *Id*. at 200-207.  Dr. Amon reviewed Plaintiff's prior denial in 2003,

8  medical reports from treatment he received on July 31, 2006, May 7, 2007, May 15, 2007, and Dr.

9  Sun's evaluation.  *Id*. at 205-206.  Based on Plaintiff's level of obesity, Dr. Amon concluded that

10  Plaintiff was capable of no more than sedentary activity.  *Id*. at 206.  Using a multiple choice form,

11  Dr. Amon found that Plaintiff could stand or walk for about two hours with normal breaks and sit for

12  about six hours with normal breaks in an eight-hour workday.  *Id*. at 201.  Dr. Amon also concluded

13  that Plaintiff could frequently lift ten pounds and occasionally lift twenty pounds.  *Id*.  Finally, Dr.

14  Amon concluded that Plaintiff should be limited to occasionally climbing, stooping, kneeling,

15  crouching, and crawling.  *Id*. at 202.

16            **5**.  **Dr. David Pong**

17          On December 5, 2007, Dr. David Pong ("Dr. Pong") produced an additional functional

18  assessment based on Plaintiff's treatment history.  *Id*. at 228-229.  Upon review of the 2003 ALJ

19  findings, Plaintiff's medical treatment in July 2006 and May 2007, and Dr. Sun's examination Dr.

20  Pong concluded that Plaintiff is able to perform at least sedentary work.  *Id*.

21            **6**.  **Dr. Bradley Chipps**

22          Dr. Bradley Chipps ("Dr. Chipps") evaluated Plaintiff's August 16, 2008 sleep study.  *Id*. at

23  245.  Dr. Chipps concluded that Plaintiff experienced "[s]leep disordered breathing with control using

24  CPAP 15 cm water."  *Id*.  Dr. Chipps' opinion was based on a full polysomnogram report from Sutter

25  Sleep Disorders Center.  *Id*. at 246-250.

26        **D.**  **Administrative Hearing**

27          The ALJ held an administrative hearing on August 13, 2009.  *Id*. at 21.  Plaintiff and his

28  attorney, David Lee, attended and testified.  *Id*.  Plaintiff stated that he hurt his back when he fell

down while working at Pilot Travel Center ("Pilot").  *Id*. at 25.  Plaintiff worked at Pilot between 2001 and 2003.  *Id*. at 125.  After the injury, he was put on light duty work.  *Id*. at 25.  He testified that, after the injury, he had difficulty getting out of bed in the morning, he experienced pain in the left side of his body while he walked and leg numbness, and would feel pain after sitting down for twenty to thirty minutes.  *Id*.  He testified that he was unable to continue working at Pilot, but went through the worker's compensation process.  *Id*.

Plaintiff stated that, after he separated from Pilot, he unsuccessfully engaged in a retraining program to do computer work.  *Id*. at 26-27.  He explained that he "never figured it out totally" and was "having a lot of problems sitting down … and standing up."  *Id*. at 27.  He elaborated that if he does "that" for a long time he experiences pain in his legs and back.  *Id*.

Plaintiff testified that, at some point after the training program, he obtained a job through a friend.  *Id*. at 26.  On the job, he suffered a mild heat stroke coupled with severe leg cramps.  *Id*. Plaintiff stated that he was hospitalized and told to take ten days off work, which he did.  *Id*.  Plaintiff testified that he was terminated upon his return to work.  *Id*.  He explained that his employer told him it was because he did not inform them he was taking time off.  *Id*.  Plaintiff states that he has applied to jobs since then, including work at gas stations and "anything that [he] can try to do," but that he has not found work.  *Id*. at 27.

As to his symptoms, Plaintiff testified that he has experienced shooting pain and numbness in his left leg ever since he fell down at Pilot.  *Id*. at 36.  He stated that he weighed approximately 525 pounds at the time of the hearing.  *Id*. at 33.  He testified that he has avoided driving ever since he was diagnosed with sleep apnea.  *Id*.  He explained that his CPAP machine will sometimes help, but he wakes up in the middle of the night choking and has to take it off.  *Id*. at 34.  His attorney elaborated that Plaintiff has low back pain, radiating down the left leg, and that he has obstructive sleep apnea increasing his fatigue.  *Id*. at 32.

Plaintiff testified that he can sit between 30 minutes and an hour before feeling pain.  *Id*. at 36. When asked if he could sit for two hours, Plaintiff responded, "I don't know."  *Id*.  Plaintiff testified that he can walk for 30 to 40 minutes before he has to stop and take the weight off of his back.  *Id*. Plaintiff stated that his doctor advised him to avoid lifting many objects.  *Id*. at 37.

United States District Court
Northern District of California

7

1    Plaintiff lives with a roommate who receives in-home care. *Id*. at 35.  The in-home care

2  provider does the cleaning, the shopping, and the cooking. *Id*.  At present, Plaintiff testified that he

3  spends his time staying at home and watching television. *Id*. at 34-35.  He explained that a lot of

4  times he can only get up to use the bathroom. *Id*.  He stated that sometimes he walks around the

5  house or sits up and tries to do things, but that he does not have a lot of things to do. *Id*. at 35.

6          **E.      The ALJ's Five-Step Analysis and Findings of Fact**

7          Disability insurance benefits are available under the Social Security Act when an eligible

8  claimant is unable "to engage in substantial gainful activity by reason of any medically determinable

9  physical or mental impairment … which lasted or can be expected to last for a continuous period of

10 not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1).  A claimant is

11 only found disabled if his physical or mental impairments are of such severity that he is not only

12 unable to do his previous work but also "cannot, considering his age, education, and work experience,

13 engage in any other kind of substantial gainful work which exists in the national economy."  42

14 U.S.C. § 423(a)(1).  The claimant bears the burden of proof in establishing disability. *Gomez v.*

15 *Chater*, 74 F.3d 967, 970 (9th Cir. 1996), *cert. denied*, 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144

16 (1996).

17         The Commissioner has established a sequential five-part evaluation process to determine

18 whether a claimant is disabled under the Social Security Act.  20 C.F.R. § 404.1520(a).  At step one,

19 the Commissioner considers whether a claimant is engaged in "substantial gainful activity."  20

20 C.F.R. § 404.1520(a)(4)(i).  If he is, the Commissioner finds that the claimant is not disabled, and the

21 evaluation stops.

22         If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to the

23 step two and considers whether the claimant has "a severe medically determinable physical or mental

24 impairment … or combination of impairments that is severe," which meets the duration requirement

25 in 20 C.F.R. § 404.1509.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is severe if it "significantly

26 limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §

27 404.1520(c).  If the claimant does not have a severe impairment, disability benefits are denied at this

28 step.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

If the claimant has one or more severe impairments, the Commissioner will proceed to step three of the analysis, comparing the medical severity of the claimant's impairments to a compiled listing of impairments that the Commissioner has found to be disabling.  20 C.F.R. § 404.1520(a)(4)(iii).  If one or a combination of the claimant's impairments meet or equal a listed impairment, the claimant is found to be disabled.  *Id*.

If the Commissioner does not find the claimant to be disabled at step three, the Commissioner proceeds to step four and considers the claimant's residual functional capacity in light of his impairments and whether the claimant can perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404.1560(b) (defining past relevant work).  If the claimant can still perform past relevant work, he is found not to be disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant cannot perform past relevant work, the Commissioner performs the fifth and final step of the analysis.  20 C.F.R. § 303.1520(a)(4)(v).

At step five, the burden shifts to the Commissioner to show that the claimant, in light of his impairments, age, education, and work experience, can perform other jobs in the national economy.  *Johnson v. Chater*, 108 F.3d 178, 180 (9th Cir. 1997); 20 C.F.R. § 404.1520(a)(4)(v).  A claimant who is able to perform other jobs that are available in significant numbers in the national economy is not considered disabled, and will not receive disability benefits.  20 C.F.R. § 404.1520(f).  Conversely, where there are no jobs in the national economy that the claimant can perform, the claimant is found to be disabled.  *Id*.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 20, 2006.  AR at 13.

At step two, the ALJ found that Plaintiff "has the following severe impairments:  morbid obesity and obstructive sleep apnea."  *Id*.  The ALJ noted that Plaintiff complains of severe, radiating low back pain.  *Id*. at 14.  But the ALJ determined that "there is not in this record any persuasive clinical or laboratory diagnosis of a spinal, leg or other impairment beyond that perhaps resulting from [Plaintiff's] obesity that would account for such symptoms."  *Id*.  For that reason, the ALJ held that there was insufficient evidence to diagnose any medically determinable impairment beyond

obesity.  *Id*.  The ALJ also held that there was no evidence of a medically determinable mental impairment in the treating records.  *Id*.

At step three, the ALJ held that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*.

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity.  *Id*. at 14-17.  The ALJ determined that Plaintiff has the residual functional capacity to perform the full range of sedentary work described in 20 C.F.R. 404.1567(a) and 416.967(a).  *Id*. at 14.  The ALJ summarized the bases for Plaintiff's alleged disability as "lower back injury, leg numbness, obesity, fatigue, chronic low back pain, and obstructive sleep apnea."  *Id*. at 15.  Next, the ALJ summarized Plaintiff's symptoms as described at the hearing:

> He weighed 525 pounds.  He did not drive[] because of his sleep problems and often slept during the day.  His CPAP machine helped, but he still woke up choking.  At times he cannot get out of bed.  His daily activities include watching TV.  He can sit 40-60 minutes, stand/walk 30-40 minutes and when shopping must take weigh[t] off his leg to relieve shooting pain down the leg.  He was told by his doctor not to lift heavy items.

*Id*.  The ALJ held "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause symptoms similar in nature to those alleged by the claimant; however, [Plaintiff's] allegations that his symptoms are of a disabling level of intensity, persistence and limiting effect[] are inconsistent with the credible evidence of record and not persuasive."  *Id*.  In reaching this conclusion, the ALJ determined that Plaintiff's sleep apnea was largely controllable through the use of a CPAP machine and that Plaintiff's back and knee pain would not prohibit him from performing sedentary work.  *Id*.

The ALJ reviewed Plaintiff's medical history to support this conclusion.  First, the ALJ stated that Plaintiff received treatment at Woodland Memorial hospital from July 31, 2006 to May 7, 2007 for bilateral abdominal and flank pain, bronchitis, abdominal wall strain, and a left ankle sprain.  *Id*.

Next, the ALJ noted that Dr. Sun performed a comprehensive internal medical exam for complaints of chronic low back pain radiating into the left buttock and leg.  *Id*.  The ALJ further noted that Plaintiff reported taking Tylenol as needed.  *Id*.  The ALJ stated that Plaintiff informed Dr. Sun

United States District Court
Northern District of California

1   that his daily activities included caring for his personal needs, doing light housework, and lying down

2   and resting. *Id.* The ALJ described Dr. Sun's physical examination as normal, except for Plaintiff's

3   weight of 475 pounds, elevated blood pressure, morbidly obese abdomen, decreased lumbar range of

4   motion, and left lower extremity numbness. *Id.* Finally, the ALJ noted Dr. Sun's functional

5   assessment that Plaintiff, due to only being able to walk and stand for four to six hours a day, was

6   limited to sedentary work with only mild postural limitations. *Id.* The ALJ also credited the State

7   Agency's determination, reached by Dr. Amon and Dr. Pong, that Plaintiff was limited to sedentary

8   work. *Id.* at 15-16.

9   Turning to Dr. Baumeister's opinion, the ALJ summarized Plaintiff's course of treatment at

10  the Peterson Clinic. *Id.* at 16. The ALJ noted that Plaintiff obtained treatment for morbid obesity,

11  difficulty sleeping, depression, knee and back pain, obstructive sleep apnea, left ear pain, chronic low

12  back pain, and anemia at the Peterson Clinic between March 28, 2007 and February 17, 2009. *Id.*

13  Examinations at the Peterson Clinic showed weight of up to 485 pounds, positive straight leg raising,

14  4/5 motor strength, and lumbar and left ankle tenderness. *Id.* Plaintiff's treating physician, Dr.

15  Baumeister, reported on May 5, 2008 that Plaintiff was severely disabled due to his morbid obesity,

16  weighing 482 pounds at that time. *Id.* His obesity contributed to the development of obstructive sleep

17  apnea, causing him to suffer fatigue. *Id.* Dr. Baumeister also attributed Plaintiff's reported low back

18  and leg pain to his obesity. *Id.* The ALJ concluded that Dr. Baumeister's functional assessment was

19  that Plaintiff was limited to less than a full range of sedentary work, and that Plaintiff would be

20  severely disabled for more than one year by his morbid obesity, obstructive sleep apnea, and low back

21  pain. *Id.*

22  Finally, the ALJ noted that Dr. Chipps conducted a polysomnogram with CPAP on August 16,

23  2008, well after Dr. Baumeister's functional assessment, and interpreted the test as showing sleep

24  disordered breathing controlled with CPAP. *Id.*

25  After reviewing the medical record, the ALJ highlighted the absence of hospitalization based

26  on fatigue or leg numbness, diagnostic studies of Plaintiff's spine, chiropractor care, or referral to a

27  nutritionist or other obesity specialist. *Id.* The ALJ did not credit Dr. Baumeister's opinion that

28  Plaintiff's condition was so severe as to render him disabled. The ALJ determined that Dr.

11

United States District Court
Northern District of California

Baumeister's opinion conflicted with that of Dr. Sun and the State Agency. *Id.* The ALJ placed weight on Dr. Baumeister's reliance on Plaintiff's subjective descriptions of his symptoms, as opposed to objective findings. *Id.* The ALJ also found that Dr. Baumeister's course of treatment was inconsistent with her diagnosis. *Id.* In particular, the ALJ noted that she did not take action often seen in the face of severe lower back and leg symptoms, such as requesting nerve conduction studies, requesting radiology reports, or recommending physical therapy or pain injections. *Id.* Thus, the ALJ concluded that Dr. Baumeister's conclusion ran against the weight of the evidence and determined that Plaintiff's obesity, while affecting his muscoskeletal system, did not foreclose him from sedentary work. *Id.* at 16-17.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a truck driver and auto repairman because he would be required to perform work in excess of his residual functional capacity. *Id.* at 17.

At step five, the ALJ determined that Plaintiff could perform a full range of sedentary work and thus that there are jobs that exist in significant numbers in the national economy that he can perform. *Id.* In reaching this determination, the ALJ noted that Plaintiff was a younger individual, forty years old at the alleged onset date, who had obtained a high school level education and was able to communicate in English. *Id.* Based on this determination, the ALJ denied benefits. *Id.* at 18.

**F.      Contentions of Parties**

      **1.      Plaintiff's Contentions**

Plaintiff contends that the ALJ erred in two ways:  (1) by failing to articulate specific and legitimate reasons for rejecting Dr. Baumeister's opinions; and (2) by failing to articulate clear and convincing reasons for rejecting Plaintiff's testimony.  Plaintiff's Opening Brief, 3, 10, 13.  As to the first contention, Plaintiff argued that the ALJ must articulate specific and legitimate reasons for rejecting a treating physician's opinions.  *Id.* at 6 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).  Plaintiff identified and attacked five bases for the ALJ's decision to reject Dr. Baumeister's opinion.  *Id.* at 6-9.

First, Plaintiff states that the ALJ cited Dr. Baumeister's over-reliance on Plaintiff's subjective description of his limitations.  *Id.* at 6-7.  Plaintiff contends that Dr. Baumeister relied on objective

criteria, including Plaintiff's weight, positive straight leg raising, and decreased strength in the lower left extremity. *Id.* at 7. Plaintiff argues that Dr. Baumeister's reliance on additional subjective factors was permissible in light of these objective factors. *Id.* (citing *Emrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

Second, Plaintiff states that the ALJ rejected Dr. Baumeister's opinion in part because it was inconsistent with the opinions of Dr. Sun and the State Agency. *Id.* Plaintiff argues that a difference of opinions between the treating and non-treating physicians only means that the treating physician's opinion cannot be accorded controlling weight. *Id.* (citing SSR 96-2p). Even so, Plaintiff contends that the difference of opinions cannot form the basis for the rejection of the treating physician's opinions. *Id.* (citing SSR 96-2p; *Orn v. Astrue*, 495 F.3d 625, 631-633 (9th Cir. 2007)).

Third, Plaintiff states that the ALJ rejected Dr. Baumeister's opinion in part because Dr. Baumeister noted abnormal neurological defects on only one occasion. *Id.* at 8 (citing AR at 16). Plaintiff appears to be referring to his positive straight leg raising and Dr. Baumeister's strength finding. Plaintiff argues that it is unreasonable to expect the treating physician to repeatedly administer time consuming tests when the patient's reports of pain symptoms are corroborated by abnormal clinical findings such as straight leg raising and muscle weakness. *Id.*

Fourth, Plaintiff states that the ALJ rejected Dr. Baumeister's opinion in part because Dr. Baumeister did not make the traditional recommendations for those who suffer from debilitating back impairments. *Id.* (citing AR at 16). Plaintiff contends that the ALJ overlooked his obesity. *Id.* For example, Dr. Baumeister ruled out surgery because it would pose risks given Plaintiff's weight. *Id.* at 8-9. Plaintiff argues that it is thus unsurprising that Dr. Baumeister would not order other tests or therapy when Plaintiff's main problem was his obesity. *Id.* at 9. Plaintiff states the Dr. Baumeister also chose not to refer him to a dietician or weight loss program because he lacks the financial capability to engage in such programs. *Id.* (citing AR at 244; *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) (disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds)).

Fifth, Plaintiff states that the ALJ rejected Dr. Baumeister's opinion because the weight of the evidence failed to indicate that Plaintiff was incapable of performing sedentary work. *Id.* Plaintiff

United States District Court
Northern District of California

1    argues that this is incorrect, because the ALJ relied on the opinions of Dr. Sun and the State Agency,

2    neither of whom was aware of Plaintiff's sleep apnea. *Id*. at 9-10. Moreover, Plaintiff argues that

3    even if he is limited to sedentary work, he is disabled based on Dr. Baumeister's observation that he

4    had difficulty bending or stooping. *Id*. at 10 (citing SSR 85-15 ("[i]f a person can stoop occasionally

5    (from very little to one-third of the time) in order to lift objects, the sedentary and light occupational

6    base is virtually intact"); SSR 96-9p ("[a]n ability to stoop occasionally; i.e. from very little to one-

7    third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop

8    would significantly erode the unskilled sedentary base and a finding that the individual is disabled

9    would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the

10   unskilled occupational base of sedentary work") (emphasis in original)).

11          Based on these five arguments, Plaintiff argues that the ALJ committed reversible error by

12   failing to articulate specific and legitimate reasons for rejecting Dr. Baumeister's opinion. *Id*.

13   Plaintiff argues that the Court should reverse the ALJ and award benefits under the *Smolen* test

14   because (1) the ALJ failed to provide legally sufficient reasons for rejecting Dr. Baumeister's opinion;

15   (2) there are no outstanding issues that must be resolved before a determination of disability can be

16   made; and (3) it is clear from the record that the ALJ would be required to find that Plaintiff was

17   disabled were Dr. Baumeister's opinion credited. *Id*. at 10-11 (citing *Smolen v. Chater*, 80 F.3d 1273,

18   1292 (9th Cir. 1996)).

19          Next, Plaintiff turns to his contention that the ALJ erred by failing to credit Plaintiff's

20   testimony. *Id*. at 11-13. Plaintiff identifies three reasons that the ALJ rejected his testimony.

21          First, Plaintiff states that the ALJ rejected his testimony in part because the ALJ found that his

22   sleep apnea could be controlled by the use of a CPAP machine. *Id*. at 12. Plaintiff argues that the

23   ALJ overlooked evidence of his difficulties using the machine such as choking sensations and throat

24   secretions. *Id*. (citing AR at 255).

25          Second, Plaintiff states that the ALJ rejected his testimony in part because the ALJ determined

26   that he does not suffer from a medically determinable condition other than obesity. *Id*. Plaintiff

27   argues that whether his disability results from obesity is irrelevant, all that matters is how the obesity

28   affects him individually or in combination with other impairments. *Id*. (citing SSR 02-1p).

United States District Court
Northern District of California

1    Third, Plaintiff states that the ALJ rejected his testimony in part because the ALJ found that

2  there is no persuasive evidence that he is unable to perform sedentary exertion. *Id.* Plaintiff

3  incorporates his fifth argument for rejecting Dr. Baumeister's testimony to rebut this assertion. *Id.*

4    Based on those three arguments, Plaintiff concludes that the ALJ failed to articulate clear and

5  convincing evidence for rejecting his testimony. *Id.* at 13. Plaintiff states that it is not clear what

6  result would be follow if his testimony were credited as true, thus Plaintiff argues that the Court

7  should remand the matter for administrative proceedings crediting Plaintiff's testimony as true. *Id.*

8  (citing *Vasquez v. Astrue*, 572 F.3d 586, 593-594 (9th Cir. 2009) (crediting claimant's testimony and

9  remanding for further administrative proceedings)).

10    **2.      Defendant's Contentions**

11    Defendant counters that the ALJ supplied valid reasons for rejecting Dr. Baumeister's letter

12  and discrediting Plaintiff's testimony. Defendant's Opposition to Plaintiff's Opening Brief, 5, 9.

13    As to the ALJ's decision to not to credit Dr. Baumeister's opinion, Defendant argues that "[a]n

14  ALJ 'may disregard the treating physician's opinion whether or not that opinion is contradicted.'" *Id.*

15  at 5 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Defendant states that the

16  Commissioner's findings must be upheld if supported by substantial evidence. *Id.* (citing 42 U.S.C. §

17  405(g); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2)). Defendant contends that the ALJ met this

18  burden for four reasons.

19    First, Defendant argues that Dr. Sun, and the State Agency physicians Dr. Amon and Dr.

20  Pong, offered contrary opinions that provided a legitimate reason for rejecting Dr. Baumeister's

21  opinion. *Id.* at 6 (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)

22  (rejecting a treating source's opinion where it was in the form of a checklist, did not have supportive

23  objective evidence, was contradicted by other statements and assessments of the Plaintiff's medical

24  condition, and was based on Plaintiff's subjective descriptions of pain); *Morgan v. Comm'r of Soc.*

25  *Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("we have consistently upheld the Commissioner's

26  rejection of the opinion of the treating or examining physician, based *in part* on the testimony of a

27  nontreating, nonexamining medical advisor") (emphasis in original)).

28

15

United States District Court
Northern District of California

1    Second, Defendant argues that Dr. Baumeister's opinion was inconsistent with her own

2    treatment notes. *Id*. Defendant characterizes Dr. Baumeister's treatment as conservative. *Id*.

3    Defendant notes that Dr. Baumeister prescribed Tylenol, acetaminophen, Motrin, and ibuprofen,

4    which Defendant states are over-the-counter pain relievers. *Id*. at 7. Defendant elaborates that,

5    although Dr. Baumeister explained why she did not recommend surgery, she failed to address the

6    middle ground between over-the-counter pain relievers and surgical procedures. *Id*. Defendant

7    argues that Dr. Baumeister would have considered physical therapy, epidural injections, and narcotic

8    pain medication if Plaintiff was experiencing a disabling level of pain. *Id*.

9    Third, Defendant contends that there are no objective findings in the record that support a

10   finding that Plaintiff is experiencing a disabling level of back pain. *Id*. Defendant states that Plaintiff

11   has normal range of motion, normal motor strength, normal reflexes, walks with a normal gait,

12   remains neurologically intact, and is capable of normal movement. *Id*. (citing AR at 186, 197-198,

13   223, 227-228, 244). Defendant further contends that, given the alleged absence of objective evidence,

14   the ALJ reasonably concluded that Dr. Baumeister relied on Plaintiff's subjective descriptions of his

15   pain. *Id*. Defendant argues that the ALJ acted properly in rejecting Dr. Baumeister's opinion based

16   on those descriptions, which the ALJ found to be less than credible. *Id*.

17   Fourth, Defendant states the opinions of Dr. Yang, Dr. Amon, and Dr. Pong constituted

18   substantial evidence for the ALJ's determination that Plaintiff is able to perform sedentary work. *Id*.

19   at 8 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a consultive examiner's

20   "opinion alone constitutes substantial evidence, because it rests on his own independent examination

21   of [claimant]"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("[t]he opinions of non-

22   treating or non-examining physicians may also serve as substantial evidence when the opinions are

23   consistent with independent clinical findings or other evidence in the record")). Defendant argues that

24   the ALJ acted properly in assessing the impact of Plaintiff's obesity in the same way the ALJ would

25   treat any other impairment, making "[a]n assessment … of the effect obesity has upon the individual's

26   ability to perform routine movements and necessary physical activity within the work environment."

27   *Id*. (citing SSR 02-1p). Defendant supports this assertion by pointing out that Dr. Yang was aware of

28

Plaintiff's obesity, but based her functional assessment on his ability to move and function as displayed at the examination. *Id*. (citing AR at 197-198).

As to the ALJ's decision not to credit Plaintiff's testimony, Defendant contends that the ALJ made specific credibility findings that are properly supported by the record sufficient to demonstrate that the ALJ did not arbitrarily discredit Plaintiff's testimony. *Id*. at 9 (citing *Thomas*, 278 F.3d at 958; *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

First, Defendant states that the ALJ did not reject the entirety of Plaintiff's testimony, but only found that Plaintiff could perform sedentary work because the objective evidence in the record did not suggest a more reduced capacity. *Id*. (citing AR at 15). Thus, Defendant argues the ALJ narrowly found that Plaintiff was not credible as to the severity of his restriction in light of objective evidence including lower back tenderness, questionable straight leg raising tests, normal gait, normal strength, normal reflexes, and normal range of motion. *Id*. at 9-10 (citing AR at 186, 197-198, 223, 227-228, 244, 260).

Second, Defendant argues that the ALJ properly determined that Plaintiff's sleep apnea did not render him disabled because it was amenable to control. *Id*. at 10 (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). Defendant argues that Plaintiff's testimony that his CPAP machine improved his symptoms and Dr. Chipp's statement that Plaintiff's sleeping disorder could be controlled by CPAP support the ALJ's determination. *Id*. (citing AR at 34, 245).

Third, Defendant argues that Plaintiff's testimony was properly discredited because, as discussed above, it conflicts with the conservative treatment prescribed by Dr. Baumeister. *Id*. (citing AR at 196-197, 209, 251, 256, 262; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)).

Finally, Defendant argues that a reviewing court should not credit improperly rejected evidence as true and award benefits, but should instead remand the case to the Commissioner to correct any error. *Id*. at 11-12 (citing *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)).

## III.   ANALYSIS

### A.   Legal Standard

In reviewing the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner that are free from legal error and "supported by substantial evidence." 42 U.S.C. §

1  405(g).  Substantial evidence is "such evidence as a reasonable mind accepts as adequate to support a

2  conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

3  Substantial evidence means "more than a mere scintilla" but "less than a preponderance."  *Id.*;

4  *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  Even if the

5  Commissioner's findings are supported by substantial evidence, they should be set aside if proper

6  legal standards were not applied when using the evidence to reach a decision.  *Benitez v. Califano*,

7  573 F.2d 653, 655 (9th Cir. 1978).  In reviewing the record, the Court must consider both the evidence

8  that supports and detracts from the Commissioner's conclusion.  *Smolen*, 80 F.3d at 1279 (citing

9  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

10  **B.      Whether the ALJ Erred in Determining Plaintiff's Residual Functional Capacity**

11  The ALJ found that Plaintiff has the residual functional capacity to engage in sedentary work

12  in spite of his obesity and sleep apnea.  Plaintiff contends that the ALJ made three errors in reaching

13  this finding.  First, Plaintiff contends that the ALJ improperly discredited Plaintiff's testimony.

14  Second, Plaintiff contends that the ALJ improperly discredited Dr. Baumeister's assessment of his

15  functional capacity.  Third, Plaintiff contends that the ALJ failed to properly consider his sleep apnea.

16  As discussed below, the ALJ did not err.

17  **1.      Discrediting Plaintiff's Testimony**

18  A claimant's credibility is the degree to which the claimant's statements can be believed and

19  accepted as true.  SSR 96-7p at 4.  The ALJ must make credibility findings to determine the truth of a

20  claimant's description of her symptoms and pain.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.

21  1996) (holding ALJ responsible for determining credibility and resolving conflicts in medical

22  testimony).  When making such findings, the ALJ "must consider the entire case record and give

23  specific reasons for the weight given to the [claimant's] statements.  The reasons for the findings must

24  be grounded in the evidence and articulated in the determination or decision."  *Id*.  First, the ALJ must

25  determine whether the claimant has submitted objective medical evidence of the underlying

26  impairment "which could reasonably be expected to produce the pain or other symptoms alleged."

27  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  Second, if the claimant meets the first

28

step and there is no affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Id*.

The Ninth Circuit has articulated several factors that can be considered in determining whether a claimant's symptom testimony is credible.  These include the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Soc. Sec. Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not second-guess the ALJ's finding.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms similar in nature to those Plaintiff described.  The ALJ did not find that Plaintiff is malingering.  Therefore, the ALJ may reject Plaintiff's testimony about his symptoms only based on specific, clear and convincing reasons supported by substantial evidence in the record.

The ALJ credited Plaintiff's testimony insofar as he found that Plaintiff suffered from sleep apnea and measurable back and knee discomfort as a result of his obesity.  But the ALJ concluded that Plaintiff's allegations that his symptoms were of a disabling level of intensity, persistence, and limiting effect were not persuasive.  The ALJ provided two bases for this conclusion.  First, the ALJ found that Plaintiff's sleep apnea was largely controllable.  Second, the ALJ found that Plaintiff's description of his symptoms was inconsistent with the medical evidence of the record as there was no "persuasive medical evidence" that Plaintiff's physical problems would prevent him from performing sedentary work with mild postural limitations.  The ALJ did not err.

Plaintiff also argues that the ALJ rejected Plaintiff's testimony because the ALJ improperly failed to consider the impact his obesity has on him.  But the ALJ expressly stated, "While there is no question his obesity impacts his muscoskeletal system, treating records and CE clinical findings do not support limitations that would foreclose work of a purely sedentary nature."  AR at 16-17.  Thus, the ALJ found that the symptoms caused by Plaintiff's obesity limited him to sedentary work.

19

Plaintiff's argument that the ALJ disregarded his symptoms because they were caused by obesity
must be rejected because it mischaracterizes the ALJ's opinion.

**a.**     **Sleep Apnea Testimony**

The entirety of Plaintiff's testimony is as follows:

> Q:     Do you have trouble driving?
>
> A:     Since I've been with this sleep apnea thing I haven't really drive --
>
> Q:     All right.
>
> A:     -- because -- I don't get very much sleep at night and I sleep most of the time during
> the daytime.  When I go to sleep --
>
> Q:     All right.
>
> A:     -- I wake up in the middle of the night choking and --
>
> Q:     Do you get --
>
> A:     -- I have a machine but --
>
> Q:     Does that help?
>
> A:     Sometimes it will help, but I've had them adjusted two or three times because the
> airflow is --
>
> Q:     Okay.
>
> A:     And even when I have that on I'll wake up and choke in the middle of the night.  Will
> have to take it off and --
>
> Q:     Okay.
>
> A:     -- so --
>
> Q:     Do you drink --

*Id*. at 33-34.  The ALJ determined that Plaintiff's sleep apnea is largely controllable.  The ALJ noted
that Plaintiff testified that the CPAP machine helped, but he still woke up choking.  *Id*. at 15.  The
ALJ did not discredit Plaintiff's testimony.  Moreover, the record indicates that Plaintiff's sleep apnea

United States District Court
Northern District of California

1  was controllable.  Dr. Chipps interpreted Plaintiff's polysomnogram as showing sleep disordered

2  breathing controlled with CPAP.  *Id*. at 245.  Moreover, the underlying sleep study showed zero

3  apneas.  *Id*. at 245-250.  The ALJ specifically relied on Dr. Chipps' assessment.  *Id*. at 16.  Thus, the

4  ALJ did not err in determining that Plaintiff's sleep apnea was largely controllable using the CPAP

5  machine.

6

7  **b.**      **Testimony Regarding Intensity, Persistence, and Limiting Effect of Pain**

8

9  Plaintiff testified that he has problems both sitting down and standing up based on pain in his

10  legs and in his back.  *Id*. at 27.  Plaintiff further testified that he can sit between thirty minutes and an

11  hour before he starts feeling pain and can walk for thirty to forty minutes before experiencing

12  shooting pains and numbness in his left leg.  *Id*. at 36.  The ALJ did not specify exactly those portions

13  of Plaintiff's testimony that were unpersuasive, referring more generally to Plaintiff's testimony

14  regarding the intensity, persistence, and limiting effect of his symptoms.  It appears the ALJ was

15  referring to this testimony.  Moreover, the ALJ discredited Plaintiff's testimony for the broad reason

16  that it was "inconsistent with the credible evidence of record."  The ALJ then summarized the record.

17  Thus, the ALJ appears to have been referring to Dr. Sun's assessment, the State Agency assessment,

18  lack of hospitalization for his back and leg symptoms, emergency room treatment, pain clinic

19  treatment, diagnostic studies of Plaintiff's spine, chiropractor care, or treatment by a nutritionist or

20  other obesity specialist.  The ALJ discarded the corroborating portions of Dr. Baumeister's opinion, as

21  discussed below.

22  In assessing Plaintiff's credibility, relevant factors include, among other things, whether

23  Plaintiff takes medication or undergoes other treatment for symptoms and whether the alleged

24  symptoms are consistent with medical evidence.  *Lingenfelter*, 504 F.3d at 1040 (citing SSR 96-7p at

25  3-4).  An ALJ cannot reject Plaintiff's subjective pain or symptom testimony simply because the

26  alleged severity of the pain or symptoms is not supported by objective medical evidence.  *Id*. at 1040

27  n.11.  On the other hand, an "unexplained, or inadequately explained, failure to seek treatment" may

28  be the basis for an adverse credibility finding unless one of a "number of good reasons for not doing

United States District Court
Northern District of California

so" applies. *Orn*, 495 F.3d at 638 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Moreover, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony." *Parra*, 481 F.3d at 750-751 (affirming ALJ determination that Plaintiff's knee pain testimony was not fully credible based on evidence showing normal knee function and treatment with over-the-counter pain medication); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-1040 (9th Cir. 2008) (affirming ALJ's adverse credibility finding where Plaintiff did not seek out an aggressive treatment program or an alternative treatment program and where conservative treatment produced results). The rationale is that a person's normal reaction to pain is to seek relief. *Orn*, 495 F.3d at 638. Thus, the failure to seek out treatment for pain makes the complaint of pain less credible. *Id*.

Here, Plaintiff sought out and received conservative pain treatment from Dr. Baumeister between at least March 2008 and February 2009. Treatment included prescriptions for Tylenol, Motrin, acetaminophen, and ibuprofen. The ALJ highlighted the absence of more aggressive pain treatment in the record.

Plaintiff has not provided a reason for failing to seek further pain treatment. At his hearing, Plaintiff testified that, at the time of the hearing, he was trying to deal with his weight problem but was having difficulty because he had no medical coverage. AR at 29. Dr. Baumeister's opinion and treatment notes reflect that Plaintiff is unable to afford intensive weight loss programs or bariatric surgery. Plaintiff also testified that he has never had an MRI to uncover the cause of his back pain because he does not fit in an MRI machine, although Dr. Baumeister considered but rejected sending Plaintiff for an Open MRI because she does not believe surgery is a viable option considering Plaintiff's weight. However, as the ALJ noted, surgery is not the only treatment for Plaintiff's symptoms. *Id*. at 16. Specifically, the ALJ noted that Dr. Baumeister did not consider physical therapy, a pain clinic, or pain injections. *Id*. Moreover, there is no statement in the record that Plaintiff was unable to pursue treatment for his pain because he lacked medical coverage. *Compare Orn*, 495 F.3d at 638 (ALJ erred in rejecting Plaintiff's pain testimony because Plaintiff had not sought treatment where Plaintiff explained in his testimony that he would have liked to have seen his doctors more often, but was unable to do so because he "can't afford it" and sought treatment for his symptoms when he was able to go to the doctor).

United States District Court
Northern District of California

The inconsistent medical evaluations support the ALJ's conclusion.  The ALJ stated that Dr. Sun's examination revealed largely normal results, with the exception of Plaintiff's obesity, heightened blood pressure, decreased lumbar range of motion, and leg numbness.  AR at 15.  The ALJ also relied on the State Agency physicians, Dr. Amon and Dr. Pong, who concluded that Plaintiff was capable of sedentary work.  *Id.* at 15-16.  Finally, the ALJ noted that the Woodland Memorial Hospital treating records did not demonstrate disabling impairments.  *Id.* at 16.

The ALJ properly relied on Plaintiff's conservative pain treatment and inconsistent medical examination results as substantial evidence to discredit Plaintiff's testimony regarding the limiting effect of his pain.  This Court will not disturb the ALJ's ruling.

### 2.    Discrediting Dr. Baumeister's Assessment

In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians:  1) those who treat the claimant (treating physicians); 2) those who examine but do not treat the claimant (examining physicians); and 3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester*, 81 F.3d at 830 (9th Cir. 1995).  In *Lester*, the court set forth the general standards that are applied in determining the relative weight to be given to the medical opinions of the three types of physicians.  *Id.*  Relevant here is the portion concerning treating physicians:

> As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

*Id.*  Moreover, "a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected…  In many cases, a treating source's medical opinion will be entitled

to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 631-632 (quoting SSR 96-2p).

It is undisputed that Dr. Baumeister is a treating physician.  Therefore, the applicable standard for determining whether the ALJ provided adequate reasons for rejecting Dr. Baumeister's opinions depends on whether they are contradicted by another doctor.  Dr. Baumeister concluded that Plaintiff was disabled, unable to stand for more than "15," unable to walk for more than five minutes, and unable to bend to tie his shoes.  Dr. Baumeister also found that Plaintiff had reduced strength in his left leg.  On the other hand, Dr. Sun concluded that Plaintiff should be expected to stand or walk four to six hours in an eight-hour workday, was able to take off his shoes, had symmetrical strength, and had only mild postural limitations.  Because Dr. Sun's opinions conflict with those of Dr. Baumeister, the Court applies the "specific and legitimate" standard.  Below, the Court addresses the reasons offered by the ALJ in support of his determination that Dr. Baumeister's opinion should be given little weight, that is:  (1) Dr. Baumeister relied too heavily on Plaintiff's subjective description of his back and knee pain rather than objective findings; (2) Dr. Baumeister's opinions were inconsistent with those of Dr. Sun, Dr. Amon, and Dr. Pong; (3) Dr. Baumeister only made positive straight leg raise and reduced left lower extremity strength findings on one occasion; (4) Dr. Baumeister did not make traditional recommendations in the face of severe back and leg symptoms; and (5) Dr. Baumeister's opinions were inconsistent with the weight of the evidence.  As discussed below, Dr. Baumeister's failure to make traditional recommendations in the face of severe back and leg symptoms coupled with her conservative treatment, as reflected in her treatment notes, provided a specific and legitimate reason supported by substantial evidence for the ALJ's decision to discredit her opinion as to the severity of Plaintiff's limitations.  The ALJ did not err in assessing Dr. Baumeister's testimony as to Plaintiff's pain symptoms.

### a.  Reliance on Plaintiff's Subjective Description of his Symptoms

The ALJ concluded that Dr. Baumeister relied too heavily on Plaintiff's subjective description of his back and leg pain.  "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'"  *Morgan*, 169 F.3d at 602 (quoting *Fair v. Bowen*, 885

24

United States District Court
Northern District of California

F.2d 597, 605 (9th Cir. 1989)).  In *Morgan*, the court noted that the ALJ listed examples of how the examining psychologist's opinion was "unreasonable given the description of [the claimant's] symptoms in [the] reports and other evidence in the record."  *Id.* at 601.  Similarly, in *Tommasetti*, the Ninth Circuit affirmed the ALJ's decision to partially reject the opinion of a treating physician where the ALJ provided specific and legitimate reasons demonstrating that the opinion largely reflected the plaintiff's subjective complaints and contained little independent analysis or diagnosis.  *Tommasetti*, 533 F.3d at 1041.  On the other hand, acting under the clear and convincing standard, the Ninth Circuit found error when the ALJ asserted that the examining physician "relied too heavily on [the claimant's] subjective complaints" where there was nothing in the record to suggest that the examining physician relied more heavily on the claimant's complaints than on his own clinical observations.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

As discussed above, the ALJ properly discredited Plaintiff's testimony as to the limiting effect of his pain symptoms.  However, Dr. Baumeister also relied on objective evidence of Plaintiff's extreme obesity, his then untreated sleep apnea, fatigue, a positive straight leg raise test, and decreased strength in Plaintiff's left leg.  As in *Ryan*, there is no indication that Dr. Baumeister relied more heavily on Plaintiff's complaints than on her own clinical observations.  Therefore, this is not a specific and legitimate reason that supports discarding Dr. Baumeister's opinions.

### b.    Inconsistency Between Dr. Baumeister's Opinions and those of Dr. Sun, Dr. Amon, and Dr. Pong

The ALJ noted inconsistency between Dr. Baumeister's opinions and those of Dr. Sun, Dr. Amon, and Dr. Pong.  Plaintiff argues that this is an insufficient basis for disregarding Dr. Baumeister's opinion.  Plaintiff is correct, this basis, alone, is insufficient.  "Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'"  *Orn*, 495 F.3d at 632-633 (citing SSR 96-2p at 4).  The ALJ did not give Dr. Baumeister's opinions deference.  Thus, the ALJ must provide some distinct specific and legitimate reason for rejecting Dr. Baumeister's opinions.

//

### c.     Dr. Baumeister's Objective Findings

The ALJ also rejected Dr. Baumeister's opinions because she made limited objective findings. The ALJ noted that Dr. Baumeister only made a positive straight leg raising finding and a decreased left leg strength finding on one occasion, and failed to make any other objective findings relating to Plaintiff's low back pain, leg pain, and leg numbness.  However, Dr. Baumeister's opinion was simply that Plaintiff cannot stand for more than fifteen minutes due to back pain related to his obesity, cannot walk for more than five minutes due to back pain related to his obesity, and cannot bend over to tie his shoes or drive because of his obesity.  Moreover, Dr. Baumeister stated that these conditions would not improve unless Plaintiff could lose large amounts of weight.  Dr. Baumeister ruled out the possibility of an MRI because she did not believe surgery was advisable given Plaintiff's weight.  The ALJ suggested that Dr. Baumeister should have requested radiology reports or nerve conduction studies if Plaintiff's symptoms were as severe as she opined.  The ALJ stated that these diagnostics are common in the face of severe back and leg symptoms.  The ALJ does not mention Dr. Baumeister's decision to rule out the possibility of an MRI, one type of radiology report.  Moreover, the ALJ does not explain how the findings of a nerve conduction study would be beneficial for Plaintiff, especially given his weight.  The ALJ does not provide examples of other objective findings that would have been helpful.  Thus, the ALJ has not established that Dr. Baumeister's limited objective findings are a sufficiently specific and legitimate basis for rejecting Dr. Baumeister's opinions.

### d.     Dr. Baumeister's Failure to Recommend Traditional Treatment Options

The ALJ relied on Dr. Baumeister's failure to consider several treatment options in discrediting her opinion.  These included referral to a pain clinic, physical therapy, or use of pain injections.  More broadly, the ALJ stated that the treatment records did not support limitations that would foreclose sedentary work.  The consistency of the medical opinion with the record as a whole is relevant to evaluating any medical opinion.  *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)).  The lack of any evidence of more aggressive treatment is a specific and legitimate reason for

United States District Court
Northern District of California

1   discrediting Dr. Baumeister's assessment of Plaintiff's back and leg pain.  Dr. Baumeister chose to

2   rely on over-the-counter pain medication to treat Plaintiff's pain, and there is no record that she

3   considered any of the more aggressive treatments put forth by the ALJ.  The ALJ properly relied on a

4   specific and legitimate reason based in substantial evidence for rejecting Dr. Baumeister's opinions as

5   to the disabling nature of Plaintiff's back and leg pain.

6                          **e.      Inconsistency with the Weight of the Evidence**

7          In summation, the ALJ concluded that Dr. Baumeister's opinions were "inconsistent with the

8   weight of the evidence, unsupported and unsupportable."  Plaintiff identifies this as a separate basis

9   for rejecting Dr. Baumeister's opinion.  The Court does not believe the ALJ intended it as such.  In

10  any event, this reason is not specific, as it does not pertain directly and specifically to a limitation, but

11  instead pertains to the limitations as a whole in a conclusory manner.  *See O'Neal v. Astrue*, 391

12  Fed.Appx. 614, 618 n.3 (9th Cir. 2010) (noting that "[t]he ALJ also stated that the treating physicians'

13  opinions were inconsistent with objective medical evidence.... The ALJ did not identify the particular

14  'objective medical evidence' to which he was referring, however. '[C]onclusory reasons will not

15  justify an ALJ's rejection of a medical opinion.' " (quoting *Regennitter v. Soc. Sec. Comm'r.,* 166 F.3d

16  1294, 1297 (9th Cir. 1999)).  This is true even though consistency of the medical opinion with the

17  record as a whole is a relevant consideration, because specific inconsistencies must be identified.

18  Thus, to the extent this was put forward as an independent basis for rejecting Dr. Baumeister's

19  opinion, it is not a specific and legitimate reason for so doing.

20                  **3.      The ALJ's Consideration of Plaintiff's Sleep Apnea**

21         The ALJ found that Plaintiff was severely impaired by obstructive sleep apnea.  The ALJ

22  proceeded to find that Plaintiff's obstructive sleep apnea was largely controllable based on Dr.

23  Chipps' interpretation of Plaintiff's polysomnogram as showing sleep disordered breathing

24  controllable with CPAP.  Plaintiff contends that the CPAP treatment is not working because it causes

25  choking sensations and throat secretions.

26         "Impairments that can be controlled with medication are not disabling for the purpose of

27  considering eligibility for SSI benefits."  *Warre*, 439 F.3d at 1006.  As discussed above, the ALJ did

28  not err in determining that Plaintiff's sleep apnea is controllable using a CPAP machine.  The ALJ

properly relied on Dr. Chipps' analysis of the polysomnogram report, which showed zero apneas. Moreover, there is no evidence in the record aside from Plaintiff's report of choking sensations to indicate that there were any difficulties with the CPAP machine.  By Plaintiff's testimony, the CPAP machine helped.  There was substantial evidence for the ALJ to conclude that Plaintiff's sleep apnea was controllable.

## IV.    CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's determination.

IT IS SO ORDERED.

Dated: January 16, 2013

_____

JOSEPH C. SPERO
United States Magistrate Judge